Charles E. Oates and Chaytor Oates v. Commissioner.
Oates v. Commissioner
Docket No. 85368.
United States Tax Court
T.C. Memo 1962-77; 1962 Tax Ct. Memo LEXIS 230; 21 T.C.M. (CCH) 399; T.C.M. (RIA) 62077; April 9, 1962
Charles J. Hlavinka, Esq., 315 Main St., Texarkana, Tex., for the petitioners. David E. Mills, Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The respondent has determined a deficiency in petitioners' income tax for the taxable year *231 1956 in the amount of $1,546.58. The only issues for decision are whether the respondent was correct (1) in determining that the petitioners did not sustain a deductible loss of $15,000 in connection with the joint venture between the petitioner Charles E. Oates and one Fleet Magee and (2) in determining that Magee's nonbusiness indebtedness to the petitioner in the amount of $4,000 did not become worthless during the year 1956. Findings of Fact Some of the facts have been stipulated and are incorporated herein by reference. The petitioners are husband and wife residing in Texarkana, Texas. They filed a joint income tax return on a cash basis for the taxable year 1956 with the district director of internal revenue at Little Rock, Arkansas. Charles E. Oates, hereinafter referred to as the petitioner, is a dentist and has been engaged in the practice of that profession in Texarkana since 1945 with the exception of a period from 1952 to 1954 when he was in the military service. Petitioner estimated that he devoted about 7 to 8 hours each day, 5 1/2 days a week to his dental practice. In December 1949 petitioner and Fleet Magee entered into a joint venture to acquire cattle for *232 the purpose of resale. The joint venture agreement was not reduced to writing. However, it appears that the understanding of the parties was that Magee, who was experienced in the cattle business, would act as the purchasing agent for the venture; that petitioner would furnish the funds to acquire the stock selected by Magee; and that Magee thereafter was to husband the herd and provide pasture for it on land which he owned or leased. Magee was to bear the expenses of maintaining the herd, and the petitioner was to bear the losses resulting from any damage or death within the herd. It was further agreed that the herd was to be retained for a period of 5 years except for isolated sales to cover current expenses incurred by Magee and that at the end of this period the petitioner would be free to dispose of the original herd and the increase in the herd was to be divided equally between petitioner and Magee. During the period between December 1949 and April 1952, $13,748.50 was expended by petitioner in order to acquire cattle (cows and bulls) for the joint venture. Although the petitioner furnished the funds to acquire the herd, and as between the parties was regarded as the owner of *233 the herd, Magee's name appeared on the certificates as the owner of the registered cattle. [1] While petitioner made occasional weekend visits to Magee's farm, he did not actively participate in the acquisition or management of the herd. In 1953 a hard winter caused the death of some of petitioner's cattle. In addition, some sales of cattle were made from time to time by Magee to cover operating expenses. At about the time of the expiration of the 5-year term of the agreement, in November 1954, petitioner returned to Texarkana from the military service and sought information from Magee concerning the status of the joint venture. Magee informed petitioner that cattle prices were depressed, that a drought had made things difficult in the cattle business and that, in his opinion, no sales should be made at that time. In order to avoid a possible loss petitioner agreed to extend the joint venture. During the period between 1949 and 1955 petitioner loaned to Magee, for the latter's personal use, sums totalling $4,000 which Magee was to repay with interest. None of the funds loaned to Magee have been repaid. Sometime between *234 the latter part of 1954 and the beginning of 1956 petitioner learned that Magee had mortgaged the herd. At first petitioner was unsuccessful in obtaining an accounting from Magee but subsequent negotiations between the parties resulted in a settlement of the dispute and the execution of a document entitled "Statement of Affairs." The document was executed on January 13, 1956, and provided in part, as follows: It is now the desire and intention of these parties to settle their affairs, both as to their rights and interests in the venture, and as to the loan of money by Oates to Magee, and to render a statement of account between themselves. Therefore, for and in consideration of the release and relinquishment by C. E. Oates of all his right, title, claim or interest in and to the property of the venture to the said Fleet Magee; and in order to wind up the venture and settle the affairs of the parties therein, I, Fleet Magee, do hereby acknowledge that I am justly and truly indebted to the said C. E. Oates, as an accounting of his interest in said venture, in the sum of $11,000.00. And I, Fleet Magee, do also acknowledge that I am further justly and truly indebted to the said C. *235 E. Oates, on account of funds loaned to me for my own use, in the sum of $4,000.00. And I, C. E. Oates, do hereby release and relinquish to the said Fleet Magee all my right, title, claim and interest in and to the property of the venture, and accept this as a full and fair accounting to me by the said Fleet Magee of the affairs of our venture; and upon the payment of said sums to me, I will forever release the said Fleet Magee from all claims or demands arising out of our venture, and the funds I loaned to him for his personal use. WITNESS our hands this 13th day of January, 1956. Witness: (signed) T. E. Webber (signed) Fleet F. Magee (signed) C. E. Oates No deduction for depreciation was ever claimed by petitioner on account of the herd. From approximately 1949 to 1956 Magee operated a retail liquor store, known as Endsley's Liquor Store, in partnership with Aubrey Fussell. On or about February 1, 1956, Magee purchased his partner's interest in Endsley's Liquor Store for approximately $23,000. The funds were borrowed by Magee, and the property was encumbered by a lien as a result of the loan. Since that time Magee has operated the liquor store as a sole proprietor. *236 At about the time Magee bought out his partner in Endsley's Liquor Store he also owed $40,000 to the Prudential Life Insurance Company; $60,000 to Red River Production Credit Association; $40,000 to Mercantile National Bank, Dallas, Texas; and $5,000 to the Texarkana National Bank. In addition, his farm was encumbered by a $16,000 mortgage. None of the aforementioned claims had been reduced to judgment. Opinion Issue 1. Petitioner contends that he is entitled to deduct the amount he invested in the joint venture either as a loss under section 165 of the Internal Revenue Code of 1954[2] or as a bad debt under section 166 of the Internal Revenue Code of 1954. [3] For reasons which will soon become apparent, this Court need not decide into which category petitioner's claim falls. *237 Under both section 165[4] and section 166 the basis for determining the amount of the deduction is to be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. Section 1011 provides, in effect, that the adjusted basis for determining the gain or loss from the sale or other disposition of property shall be the cost of such property adjusted as provided in section 1016, Section 1016 provides, in part, that: * * * Proper adjustment in respect of the property shall in all cases be made - (1) for expenditures, receipts, losses, or other items, properly chargeable to capital account, * * * (2) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, * * *. In the instant case petitioner between 1949 and 1952 expended the total sum of $13,748.50 for the purchase of cattle which were to be used in the operation of the joint venture. Petitioner argues that he has sustained a loss equal to this amount [5] since he was unable to recover his cattle upon *238 the termination of the joint venture. As a prerequisite to a deduction under either the loss or bad debt sections, it is incumbent upon the petitioner to prove the adjusted cost to him of the item in connection with which the loss or bad debt is sustained. Harry F. Canelo, 41 B.T.A. 713, 732, (1940); T. G. Northwall Co., 13 B.T.A. 881 (1928). The record discloses that prior to the termination of the joint venture a portion of the herd died as a result of several harsh winters and that from time to time sales of cattle were made to meet current expenses. However, no evidence was offered by petitioner to show how many cattle died, how many cattle were sold or how much they cost. Periodic losses and sales of cattle must be considered in arriving at the petitioner's adjusted basis in the purchased cattle. The fact that such evidence may be difficult, if not impossible, to obtain does not relieve the petitioner of his burden. Burnet v. Houston, 283 U.S. 223 (1931). *239 Accordingly, we hold that the petitioner has failed to establish his adjusted basis in the cattle he purchased and, correlatively, that he has failed to establish the amount of his loss or bad debt, if any. This holding makes it unnecessary for the Court to characterize the transaction as one of loss or bad debt or to determine the year of loss or worthlessness. Issue 2. During the period between 1949 and 1955 petitioner loaned to Magee for the latter's personal use sums totalling $4,000. None of the loans have been repaid. On his income tax return for 1956 petitioner claimed a bad debt loss of $4,000, although he limited his deduction for the year to $1,000. The respondent disallowed the deduction on the ground that the debt did not become worthless during the year 1956. The petitioner produced evidence to show that as of 1956 Magee was indebted to persons other than the petitioner to the extent of approximately $184,000 and that most of Magee's property was encumbered by prior liens. Petitioner contends that such facts constitute sufficient evidence of worthlessness. Assuming, but without deciding, that such facts may be indicia of worthlessness, we believe the petitioner has, *240 nevertheless, failed to establish that the debt in the instant case became worthless in 1956. The petitioner offered no evidence to show that Magee's financial condition in 1956 was worse than in some prior year or that as a result of some event in 1956 Magee was less likely to repay his loan. It appears that most of Magee's indebtedness existed prior to 1956 and there is no reason to believe that petitioner's loan was any less collectible in 1956 than it was in 1955. We sustain the respondent on this issue as well. We need not, and do not, decide in what year, either prior to or subsequent to 1956, the $4,000 indebtedness did, in fact, become worthless. Decision will be entered for the respondent. Footnotes
1. Most of the cattle acquired were registered cattle.↩
2. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * ↩
3. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly Worthless Debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially Worthless Debts. - When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.↩
4. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
5. On the petitioner's income tax return for 1956, a loss in the amount of $15,000 was claimed. Petitioner apparently has conceded that his loss, if any, was not in excess of $13,748.50.↩